# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

HAKEEM JEFFERSON,

                Plaintiff

      v.

CAROLYN W. COLVIN,
Commissioner of the Social Security
Administration

                Defendant

CIVIL ACTION NO. 1:14-CV-00910

(KANE, J.)
(SAPORITO, M.J.)

## REPORT AND RECOMMENDATION

This is an action brought under 42 U.S.C. §1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Hakeem Jefferson's claim for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred upon this Court pursuant to 42 U.S.C. §§ 1383(c)(3) (incorporating 42 U.S.C. §405(g) by reference), and this matter has been referred to the undersigned Magistrate Judge for the preparation of a report and recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure.

For the reasons stated herein, we recommend that the decision of the Commissioner denying Jefferson's application for benefits be **VACATED** and the case be **REMANDED** to conduct a new administrative hearing.

## I.    BACKGROUND & PROCEDURAL HISTORY

Jefferson alleges that he was involved in a motor vehicle accident in February 2008. The record in this case, however, does not contain any evidence of Jefferson's involvement in a motor vehicle accident in 2008.  Instead, emergency room records reflect that Jefferson presented with complaints of back pain on February 9, 2010, due to a motor vehicle accident that occurred the previous day.[1]  (Admin Tr. 424). Jefferson reported no injuries at the time of the accident, but presented to the emergency room the next day with complaints of cervical and low back pain.  X-rays of Jefferson's cervical and lumbar spine taken on February 9, 2010, were negative for any fracture. (Admin Tr. 311-12).  After the accident, he was referred for outpatient physical therapy for treatment of lumbar strain.  (Admin Tr. 275).  During his initial evaluation, Jefferson denied radicular symptoms and described lower back pain (right greater than left) aggravated by heavy lifting, and cervical pain. *Id.*  The physical therapist also noted that Jefferson's pain was resolving, but it is unclear whether this

---

[1]    There is evidence that Jefferson experienced at least one prior episode of back pain before his involvement in the February 2010 motor vehicle accident.  In February 2009 he presented at the emergency department with complaints of back pain after lifting furniture. (Admin Tr. 440). X-rays of Jefferson's lumbar spine performed that day were negative for any abnormality. (Admin Tr. 348).

comment referred to Jefferson's cervical pain or to both his lumbar and cervical pain. *Id.* It was recommended that Jefferson participate in physical therapy sessions two to three times per week for an estimated two to three weeks. (Admin Tr. 276). Jefferson attended five sessions between February 17, 2010, and March 24, 2010.

On April 6, 2010, Jefferson attended one physical therapy session to address right knee pain. (Admin Tr. 286). Jefferson reported that his knee pain originated in September 2009 after hitting his knee on a coffee table. On examination Jefferson had no reproducible pain or locking, and his greatest impairment appeared to be weakness. *Id.* An MRI of Jefferson's right knee taken in December 2009 was unremarkable. (Admin Tr. 347). As of April 2010, Jefferson reported that he was very active and continued to play basketball. (Admin Tr. 285).

An October 2010 MRI of Jefferson's lumbar spine revealed the impression of a lesion in the region of the iliac vein. It was unclear whether the lesion was related to the iliac vein or to some other abnormality. (Admin Tr. 310). A follow-up CT scan of Jefferson's pelvis, however, was compatible with the impression of a large left iliac vein. (Admin Tr. 309). No other pelvis abnormality was noted. *Id.* Further, the MRI of Jefferson's lumbar spine did not show any herniated disc or spinal stenosis. (Admin Tr. 316).

On January 6, 2011, Jefferson protectively filed an application for

3

supplemental security income under Title XVI of the Social Security Act due to back problems and right knee problems in which he alleged a disability onset of January 20, 2009.  (Admin Tr. 231).  In pre-hearing memorandum dated March 2, 2012, Jefferson amended his alleged onset date to January 6, 2011, and updated his claim to include degenerative disc disease, chronic pain, depression, and anxiety.  (Admin Tr. 104).

On March 10, 2011, nonexamining state agency medical consultant James Caramanna, M.D., opined that the evidence established a medically determinable disorder of the spine.  (Admin Tr. 130-31).  Dr. Caramanna noted that the record reflected that Jefferson's treatment had been routine and conservative in nature, and that he did not require an assistive device to ambulate.  *Id.*  He opined that Jefferson could: occasionally lift or carry twenty pounds and frequently lift or carry ten pounds; stand or walk up to six hours per eight-hour workday; and sit up to six hours per eight-hour workday.  *Id.*

In February 2011, Jefferson completed a function report in which he described his exertional and nonexertional limitations.  (Admin Tr. 237-46).  Jefferson stated that his lower back feels like someone took a hammer to it, and that this pain radiates down both of his legs.  *Id.*  In this report, Jefferson indicated that his impairments limited his abilities to lift, squat, bend, stand, reach, kneel, climb stairs, complete

4

tasks, and concentrate. *Id.* He also stated that he is able to walk up to twenty feet at one time and is able to tend to his own hygiene with some postural modifications. *Id.* Jefferson admitted that, despite his limitations, he prepares his own meals, goes outside four times per day, is able to drive a car, is able to go out alone, goes to church and visits friends and family on a regular basis, and shops for light-weight household items in stores once per month, but does not do housework. *Id.*

On March 11, 2011, the date that this claim was initially denied, nonexamining state agency psychologist Arlene Rattan, Ph.D., found that Jefferson had no medically determinable mental impairment. (Admin Tr. 129-30). She explained that her assessment was based on the fact that there was no diagnosis of any mental impairment, or indication of a medically determinable mental impairment, in the medical evidence of record as it existed at the time she rendered her opinion. *Id.* It appears that, Jefferson was subsequently diagnosed with a myriad of mental impairments in early 2012.

On July 13, 2011, an MRI of Jefferson's lumbar spine revealed some mild disc space narrowing at L4-L5 with minimal bulging of the disc. (Admin Tr. 339). Jefferson continued to report lower back pain. On August 23, 2011, Jefferson told a certified registered nurse practitioner (CRNP) that his back is very painful when he lifts his disabled adult sister. (Admin Tr. 355).

In January 2012, at the insistence of his family, Jefferson entered inpatient treatment for opioid dependence. Jefferson participated in inpatient treatment for five days, and then signed himself out against medical advice. On January 24, 2012, he was seen by Psychiatrist Syyeda Syed for outpatient care, but was discharged from treatment after he failed to schedule a second appointment. (Admin Tr. 585).

On February 27, 2012, Jefferson completed a daily activities questionnaire. (Admin Tr. 264-267). Unlike in the February 2011 function report, in this questionnaire, he reported that he is able to sweep, mop, and do some laundry with the assistance of another person. *Id.* Otherwise, the statements made in the February 2012 questionnaire were similar to his responses in the 2011 function report. *Id.*

On March 1, 2012, Jefferson was initially examined by Psychiatrist Harvey Shapiro. Jefferson referred himself for treatment of anxiety and panic. (Admin Tr. 590-93). Dr. Shapiro diagnosed Jefferson with major depressive disorder, panic disorder, obsessive compulsive disorder ("OCD"), generalized anxiety disorder, attention deficit and hyperactivity disorder ("ADHD"), social phobia, and post-traumatic stress disorder ("PTSD"). *Id.* Dr. Shapiro's report reflects that most of these conditions are related to an incident of sexual molestation by a non-family member, which occurred when Jefferson was a young child. *Id.* Jefferson reported that he experiences nightmares and flashbacks, withdraws from social situations, and

6

has panic attacks twice per day lasting up to one hour. *Id.* Jefferson also reported

obsessive thoughts, which he deals with by obsessively cleaning his home. *Id.* On

March 22, 2011, Dr. Shapiro completed a mental impairment questionnaire. (Admin

Tr. 485-90).  In this questionnaire, Dr. Shapiro opined that Jefferson had a mild

restriction in activities of daily living, marked difficulties in maintaining social

functioning, marked difficulties in maintaining concentration, persistence or pace,

and one or two episodes of decompensation within a twelve month period, each of at

least two weeks duration.[2] *Id.* He also opined that as a result of his impairments,

Jefferson would be unable to meet competitive standards in the following activities:

remembering work-like procedures; maintaining attention for a two hour segment;

working in coordination with or in proximity to others without being unduly

distracted; accept instructions and respond appropriately to criticism from

supervisors; deal with work stressors; understand and remember detailed instructions;

carry out detailed instructions; interact appropriately with the public. *Id.* Further, Dr.

Shapiro found that Jefferson had no ability to complete a normal workday and

workweek without interruption from psychologically based symptoms, deal with the

stress of skilled or semi-skilled work, or use public transportation. *Id.* Dr. Shapiro

predicted that Jefferson would be absent from work more than four days per month

---

[2]    In another section of the same opinion, Dr. Shapiro noted that Jefferson had three or more
episodes of decompensation within the last twelve months.

due to his impairments and treatment. *Id.* He also assessed that Jefferson "has a severe burden of psychotic disease." (Admin Tr. 490). Jefferson continued to see Dr. Shapiro for ongoing treatment through the date of his second administrative hearing. (Admin Tr. 594-96).

On March 8, 2012, Jefferson's primary care physician, Dr. William L. Milroth, M.D., completed a physical residual functional capacity questionnaire. (Admin Tr. 499-503). Dr. Milroth reported that Jefferson has been under his care since the onset of his condition, and noted that Jefferson's current diagnosis is bulging L4-L5 disc, OCD, attention deficit disorder ("ADD"), bipolar disorder, and social anxiety disorder. *Id.* Dr. Milroth opined that Jefferson's prognosis is poor, and that his symptoms include chronic back pain in the lumbosacral area radiating to his right knee, and anger management problems. *Id.* Dr. Milroth also indicated that, in a typical workday, Jefferson's pain and other symptoms would constantly interfere with his ability to maintain attention and concentration, and that Jefferson would be incapable of even low stress work due to constant pain and anger issues. *Id.* With respect to his exertional capabilities, Dr. Milroth opined that Jefferson could: walk half of one block without rest, and would be restricted to work that would allow him to walk for approximately ten minutes after working for forty-five minutes; sit up to twenty minutes at one time, and for a total of less than two hours per eight-hour

8

workday; stand up to forty-five minutes at one time, and for a total of less than two hours per eight-hour workday; occasionally lift or carry objects weighing less than ten pounds; never twist, stoop, crouch, climb ladders, or climb stairs; and, use his arms to reach for half of each workday.  *Id.*  Dr. Milroth also opined that Mr. Jefferson would be limited to work that would allow him to shift from sitting to standing at will, would require a fifteen to twenty minute unscheduled break each hour, and would be absent from work more than four days per month due to his impairments.  *Id.*

Dr. Milroth also completed several employability assessment forms for other agencies.  On August 1, 2011, Dr. Milroth completed a form for the Department of Public Welfare in which he opined that Jefferson became temporarily disabled beginning February 2008 due to lumbosacral pain, and that Jefferson was expected to remain disabled through February 2012. (Admin Tr. 511).  On August 4, 2011, Dr. Milroth completed a form for Domestic Relations in which he opined that Jefferson had been unable to work since August 30, 2009, due to chronic lumbosacral pain, but estimated that Jefferson would be able to return to his previous employment on February 1, 2012.  (Admin Tr. 509).  On January 26, 2012, Dr. Milroth completed a form for Domestic Relations in which he opined that Jefferson had been unable to work since August 30, 2009, due to chronic lumbosacral pain and anxiety, but

estimated that Jefferson would be able to return to his present employment on March 1, 2012.  (Admin Tr. 508).  On March 9, 2012, Dr. Milroth completed a form for Domestic Relations in which he opined that he had been unable to work since August 30, 2009, due to bulging disc, OCD ADD, and social anxiety disorder, but estimated that Jefferson would be able to return to his prior employment on October 1, 2012. (Admin Tr. 507).

X-rays of Jefferson's cervical, lumbar, and thoracic spine taken on March 19, 2012, were normal.  (Admin Tr. 513-15).

Jefferson requested, and was granted, an opportunity to have his claim evaluated during an administrative hearing.  On May 4, 2012, Jefferson, assisted by counsel, appeared and testified during an administrative hearing before Administrative Law Judge ("ALJ") Sharon Zanotto in Harrisburg, Pennsylvania. Vocational Expert ("VE") Paul Anderson also appeared, but did not testify during this hearing.

At the May 2012 hearing, Jefferson reported that he takes care of his own personal hygiene, is able to dress himself, and clean enough to pass his section 8 inspections.  (Admin Tr. 80-81, 87-90).  Jefferson also reported that he makes bi-weekly visits to his sister, and that he is visited by a friend fairly often.  (Admin Tr. 91-92).  Jefferson testified that the biggest thing that kept him from being able to

work was that he does not really like being around people, and that he also gets frustrated with criticism, and has flashbacks due to an instance of childhood sexual abuse. (Admin Tr. 98-99). Jefferson also reported that his back pain is exacerbated by bending, stretching, leaning, walking, driving, and lifting more than ten to fifteen pounds. (Admin Tr. 100-01). This hearing was then continued to September 25, 2012, due to time constraints.

In the meantime, additional imaging studies were performed on Jefferson's hips and back. On May 28, 2012 and June 24, 2012, diagnostic imaging of Jefferson's left and right hip revealed no bone, joint, or soft tissue abnormality. (Admin Tr. 554, 579). On July 30, 2012, an x-ray of Plaintiff's lumbar spine revealed no abnormality. (Admin Tr. 538).

At the second hearing, Jefferson similarly appeared and testified with the assistance of counsel. Impartial VE Michael Kibler also appeared and testified during the second hearing. During this hearing, the ALJ noted that Jefferson was using a cane to ambulate. (Admin Tr. 30). Jefferson reported that beginning September 2012 he began using a cane and back brace due to pain in his right knee and hip. *Id.* There is no evidence that this device was prescribed by a medical source. Jefferson testified that he has shooting pain in his lower back that prevents him from sitting for more than twenty minutes at one time, standing more than ten minutes at one time, lifting

more than ten pounds, and walking.  (Admin Tr. 31-33).  Unlike at his first hearing, where he asserted he could not work due to his mental impairments, at this hearing he alleged that his back pain is the primary impairment that prevents him from returning to work.  (Admin Tr. 39).  Jefferson also testified that he had difficulty getting along with, or even being in the same room with, other people. (Admin Tr. 43).  He later admitted that his live-in girlfriend does not bother him, and that he is able to socialize with his mother and sister.  (Admin Tr. 46).  Jefferson also reported that he continues to have flashbacks, panic attacks, and anger outbursts.  (Admin Tr. 43).

On September 28, 2012, the ALJ denied Jefferson's claim in a written decision. Thereafter, Jefferson requested review of his claims by the Appeals Council.  On March 25, 2014, Mr. Jefferson's request for review was denied.

Jefferson initiated this action by filing a Complaint in this Court on May 12, 2014.  (Doc. 1).  Jefferson alleges that the conclusions and findings of fact made by the Commissioner are not supported by substantial evidence and are contrary to the law and applicable regulations, and urges us to reverse the Commissioner's decision without remand, or in the alternative remand this matter for a new administrative hearing.  On October 6, 2014, the Commissioner filed her Answer to Jefferson's complaint, in which she contends that the decision denying Jefferson's applications

for benefits is correct and in accordance with the law and applicable regulations. (Doc. 8). Together with her answer, the Commissioner filed a complete copy of the administrative record. (Doc. 9).

Having been fully briefed by the parties, this appeal is now ripe for disposition. (Doc. 10; Doc. 13; Doc. 14).

## II.   STANDARD OF REVIEW

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators – the ALJ and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §1382c(A)(3)(B); 20 C.F.R. §416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a).  Under this framework, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §416.920.  Between steps three and four, the ALJ must also assess a claimant's Residual Functional Capacity ("RFC").  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §416.945; SSR 96-8p, 1996 WL 374184.  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work.  42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 423(d)(5) by reference); 20 C.F.R. §416.912;

*Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant can perform despite his or her impairments.  20 C.F.R. §416.912(f); *Mason*, 994 F.2d at 1064.

Once a final decision is issued by the Commissioner, and that decision is appealed to this Court, our review of the Commissioner's final decision is limited to determining whether the findings of the final decision maker – the ALJ in this case – are supported by substantial evidence in the record.  *See* 42 U.S.C. § 405(g)(sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  *Mason*, 994 F.2d at 1064.  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not

prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003).  The question before this Court, therefore, is not whether Jefferson is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

## III.  THE ALJ'S DECISION

In her decision, the ALJ proceeded through steps one and two of the five step sequential evaluation process, and assessed Jefferson's RFC and ability to adjust to "other work" in the alternative.  At step one, the ALJ found that Jefferson has not

engaged in any substantial gainful activity since January 6, 2011, his alleged onset date.  (Admin Tr. 13).  At step two, the ALJ found that Jefferson had a medically determinable but non-severe impairment due to depression.  (Admin Tr. 13, 16-19). She also found that Jefferson's alleged impairment due to back pain and right knee problems were not medically determinable.  (Admin Tr. 13-15).

In making this determination, the ALJ is required to weigh the opinion evidence of record in accordance with the mandates of 20 C.F.R. §404.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.  The record before the ALJ included medical opinion evidence by treating source, Dr. Milroth, nonexamining state agency medical consultant Dr. Caramanna, treating psychiatrist Dr. Shapiro, and nonexamining state agency psychologist Dr. Rattan.[3]  The ALJ was also required to consider Jefferson's testimony and statements made in the reports and questionnaires submitted in accordance with the mandates of 20 C.F.R. §416.929, and SSRs 96-4p and 96-7p. Because, after considering this evidence, she found that Jefferson had no medically

---

[3]     The Social Security Regulations discuss the nature of an acceptable medical source's treatment relationship with the claimant in terms of three broad categories: treating; examining; and non-examining.  A treating source is defined as an acceptable medical source who provides or has provided a claimant with medical treatment or evaluation, and who has or had an ongoing treatment relationship with the claimant.  20 C.F.R. §416.902.  A nontreating source is defined as an acceptable medical source that has examined the claimant but did not have an ongoing treatment relationship – like a consultative examiner.  *Id.*  A nonexamining source is defined as an acceptable medical source that has not examined the claimant, but has provided an opinion in the case – like a state agency reviewing doctor.  *Id.*

determinable severe impairment, the ALJ denied his claim at step two.  However, the

ALJ decided the remaining steps of the sequential evaluation process in the

alternative.  At step three, the ALJ found that Jefferson did not have any impairment,

or combination of impairments, that meets or medically equals one of the impairments

listed in 20 C.F.R. Part 404, Subpart P, Appendix I.  (Admin Tr. 18).  The ALJ also

found that Jefferson had the RFC to engage in sedentary work as defined in 20 C.F.R.

§416.967(a), with the following additional restrictions:

> The claimant requires the ability to alternate between sitting and standing at will; can perform no more than occasional postural activities or overhead reaching; can perform no crouching or climbing of ladders, ropes, and scaffolding; and is limited to the performance of simple, repetitive tasks involving no more than occasional decisionmaking, occasional work setting changes, occasional interaction with supervisors, and no interactions with coworkers or the public, consistent with a GED reasoning level of 1.

(Admin Tr. 19).  In her RFC assessment, the ALJ noted that she accommodated the

greatest reasonable degree of restriction based on Jefferson's allegations.  *Id.*  The

ALJ also found that, in the alternative, Jefferson had no past relevant work.  After

making additional factual findings with respect to Jefferson's age (younger person)

and education (limited), the ALJ considered these factors together with Jefferson's

RFC to conclude that Jefferson could perform other work that existed in the national

economy despite his alleged symptoms.  Her alternative conclusion is based upon

18

testimony by a VE that an individual of the same age and with the same education and RFC could perform the representative occupations of Final Assembler (DOT# 713.687-018), Table Worker (DOT# 739.687-182, and Carding Machine Operator (DOT# 681.685-030). The VE also testified that, taken together, these occupations existed in 530 jobs in the local economy, 7,000 jobs in the state economy, and 355,500 jobs in the national economy. Based on this testimony, the ALJ also concluded that these jobs existed in "significant numbers," and entered a finding of "not disabled."

## IV. DISCUSSION

Jefferson contends that the ALJ's decision is not supported by substantial evidence. First, Jefferson asserts that the ALJ's decision at step two, that he has no medically determinable severe impairment, runs afoul of 20 C.F.R. §416.921 and SSR 96-3p. (Doc. 10 pp. 11-16, Doc. 14 pp. 1-6). Second, Jefferson asserts that the ALJ failed to properly evaluate the RFC assessment by Dr. Milroth in accordance with 20 C.F.R. §416.927 and SSRs 96-2p, 96-5p. (Doc. 10 pp. 16-21, Doc. 14 pp. 6-10). In response, the Commissioner asserts that the ALJ properly applied the relevant Social Security rulings and regulations, and is supported by substantial evidence. (Doc. 13).

To be found disabled, a claimant must have one or more medically determinable "severe" physical or mental impairments. At step two, an impairment

or combination of impairments is considered "severe" if it significantly limits an individual's physical or mental ability to engage in basic work activities.[4]   By contrast, an impairment that is not severe is a slight abnormality that has no more than a minimal effect on the ability to do basic work activities.[5]   20 C.F.R. §416.921(a); *see also* SSR 85-28, 1985 WL 56856; SSR 96-3p, 1996 WL 37481.   Therefore, the existence of a medically determinable impairment cannot be established in the absence of objective medical abnormalities, regardless of how many symptoms are alleged or how genuine a claimant's complaints appear.   SSR 96-4p, 1996 WL 374187.    Once the requisite relationship between a medically determinable impairment and an alleged symptom is established, the intensity, persistence, and limiting effects of the symptoms alleged must be considered in determining whether that impairment is severe.   SSR 96-3p, 1996 WL 374181, at *2.

The burden placed on the claimant at step two is not an exacting one and should rarely be utilized as basis for the denial of benefits.   *See* SSR 85-28, 1985 WL

---

[4]        The term "basic work activities" refers to the abilities and aptitudes necessary to do most jobs.   Examples of basic work activities include: physical functions such as walking, standing, lifting, pushing, pulling, reaching carrying, or handling; the capacity to see, hear, and speak; cognitive abilities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.   20 C.F.R. §416.921(b).

[5]        Jefferson asserts that the ALJ erred by failing to apply the "slight abnormality" to his mental impairment.   We find that his argument lacks any arguable merit.   The ALJ found that Jefferson's psychiatric impairments do not result in more than minimal restrictions on his ability to perform basic work-related activities.   (Admin Tr. 18).   This is the definition of a "slight abnormality."   See SSR 96-3p, 1996 WL 374181, at *1.

56856, at *4.  Further, because it is merely a *de minimis* screening device meant to dispose of groundless claims, any doubt as to whether this showing has been made is to be resolved in the claimant's favor.  *McCrea v.Comm'r of Soc. Sec..* 370 F.3d 357, 360 (3d Cir. 2004).  Although the Commissioner's denial of benefits at step two is to be upheld if it is supported by substantial evidence, its invocation is "certain to raise a judicial eyebrow" and should be reviewed with close scrutiny.  *Id.* at 361.

Here, the ALJ found that Jefferson failed to present sufficient evidence to pass step two's *de minimis* threshold.   Jefferson asserts that this determination is erroneous.  His argument is twofold.  First, Jefferson alleges that substantial evidence does not support the ALJ's determination that he has no medically determinable back impairment.  Second, Jefferson alleges that substantial evidence does not support the ALJ's determination that his depression is nonsevere.  In response, the Commissioner asserts that the ALJ's findings are supported by substantial evidence. We note that, although Jefferson does not dispute the ALJ's alternative findings at steps three through five, we have also reviewed these findings to determine whether her decision was supported by substantial evidence despite the alleged errors at step two.

In her decision, the ALJ found that Jefferson's alleged back and right knee impairments were not medically determinable.  (Admin Tr. 14).  We find that Jefferson's allegations with respect to the ALJ's failure to find a medically

21

determinable back impairment have some merit.  Jefferson's medical records reflect that he was diagnosed with lumbar strain in February 2010, and that his pain failed to resolve despite his pursuit of appropriate treatment.  Further, although several earlier imaging studies did not reveal any abnormality,  a 2012 MRI did reveal the presence of degenerative disc disease with minimal bulging.  Moreover, the medical sources agree that Jefferson's back impairment is, at a minimum, medically determinable.

In the same vein, the ALJ's implicit rejection of several of Jefferson's diagnosed mental impairments, including generalized anxiety disorder, OCD, panic disorder, social phobia, and PTSD renders her findings at step two with respect to Jefferson's mental impairments defective.  Although Jefferson did not allege any mental impairment in his initial application for benefits, he amended his application to include the psychological impairments of depression and anxiety prior to his first administrative hearing. Further, during the second administrative hearing, the ALJ noted that Dr. Shapiro opined that Jefferson had marked and extreme limitations due to OCD, generalized anxiety disorder, major depressive disorder, panic disorder, social phobia, and PTSD. (Admin Tr. 28).  Therefore, by limiting her discussion to depression, and failing to discuss the remaining mental impairments of anxiety, OCD, panic disorder, social phobia, and PTSD, we cannot find that the ALJ's findings at

step two are supported by substantial evidence.

Thus, because the record contains objective evidence of a mild physical abnormality in Jefferson's back and several additional mental impairments, and because reasonable doubts regarding the severity or existence of an impairment are to be resolved in favor of the claimant, we find that the ALJ's decision to deny benefits at step two is not supported by substantial evidence.

Next we turn out attention to the issue of whether the ALJ's errors at step two are rendered harmless by her alterative findings in steps three through five. We find that they are not, for the simple reason that the ALJ failed to offer sufficient explanation as to what limitations from what impairments were credited or rejected in her alternative findings. *See Rutherford v. Barnhart*, 399 F.3d 546, 555(3d Cir. 2005)(noting that an ALJ must accurately convey all of a claimant's credibly established limitations to the VE and in his or her RFC assessment, and may not reject a limitation alleged by the claimant for no reason or the wrong reason); *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that the reviewing court can determine whether the reasons for the rejection were improper.")(internal citations omitted).   The language she employs suggests that most, but not all, of

Jefferson's alleged limitations are accounted for in her alternative findings. (*See* Admin Tr. 19)("In making this finding the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence ... as set forth in detail in the discussion of the claimant's various impairments."). Moreover, as discussed above, the ALJ's discussion did not address several mental health diagnoses by treating sources Dr. Shapiro and Dr. Milroth.

Thus, we also find that the ALJ's alternative findings are not supported by substantial evidence, because they fail to account for all of the impairments alleged. Because her errors at step two are not rendered harmless by her alternative findings, we recommend that this case be remanded.

Last, Jefferson contends that the ALJ improperly discounted the medical opinion of treating source, Dr. Milroth. We note that, in finding Jefferson's back impairment to be non medically determinable she essentially rejected Dr. Milroth's opinion that Jefferson had a medically determinable back impairment, and severe mental impairments. It is well-established that "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments,

speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)(internal quotations omitted).   This principle is further underscored by the Administration's own rulings and regulations, which provide that treating sources "bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone," 20 C.F.R. 416.927(c)(2), and are entitled to deference even where their opinions are not accorded controlling weight.  SSR 96-2p, 1996 WL 374188, at *4; *cf. Director, Office of Workers' Compensation Programs, United States Dept. Of Labor v. Mangifest*, 826 F.2d 1318, 1327 (3d Cir. 1987)(recognizing that "a medical report carries with it the unspoken but powerful ally of the doctor's professional judgment.").

Here, the ALJ employed her own lay interpretation of the objective medical records to infer that there was no determinable etiology for Jefferson's back pain. In her decision, the only evidence cited to support this conclusion is emergency department records in which it was noted that there was no determined etiology for Jefferson's *hip* pain.  (Admin Tr. 548).  The same records, however, note a history of chronic low back pain.  (Admin Tr. 533).  Moreover, Dr. Milroth's assessment that Jefferson's back pain and mental impairments are medically determinable is buttressed by a consistent opinions rendered by the nonexamining state agency consultant, (Admin Tr. 129), and treating psychiatrist Dr. Shapiro.  (Admin Tr. 485).

As such, because she improperly rejected the bedrock of Dr. Milroth's opinion – his diagnoses – in the absence of any contradictory evidence, we find that this rejection was improper and renders her decision defective.

## V. RECOMMENDATION

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that the Commissioner's final decision denying Hakeem Jefferson's application for benefits under Title XVI of the Social Security Act be **VACATED** and this case be **REMANDED** for a new administrative hearing.


*s/ JOSEPH F. SAPORITO, JR.*

**Dated: April 10, 2015**          JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

HAKEEM JEFFERSON,

          Plaintiff

    v.

CAROLYN W. COLVIN,
Commissioner of the Social Security
Administration

          Defendant

CIVIL ACTION NO. 1:14-CV-00910

(KANE, J.)
(SAPORITO, M.J.)

## NOTICE

Notice is hereby given that the undersigned has entered the foregoing Report and Recommendation dated April 10, 2015.  Any party may obtain a review of this Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed

findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation

may constitute a waiver of any appellate rights.

*__S/Joseph F. Saporito Jr.__*
Joseph F. Saporito, Jr.
U.S. Magistrate Judge